# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
JOHN SMITH

## DEFENDANTS
UNITED STATES OFFICE OF PERSONNEL MANAGEMENT

**(b)** County of Residence of First Listed Plaintiff   DELAWARE COUNTY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    WASHINGTON, D.C.
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Gregory B. Heller, Esquire, Young Ricchiuti Caldwell & Heller, LLC
1600 Market Street, Suite 3800
Philadelphia, PA 19103
(267) 546-1004

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff

☐ 3   Federal Question *(U.S. Government Not a Party)*

☒ 2   U.S. Government Defendant

☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
5 USC Sec. 8902, 29 USC Sec. 1185a, 42 USC Sec. 300gg, and 26 USC Sec. 8912
Brief description of cause:
Policy exclusion in Federal Blue Cross Plan violates the Mental Health Parity and Addiction Equity Act of 2008

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   Injunctive and Declaratory Relief

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE 9/9/13    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: c/o Young Ricchiuti Caldwell & Heller, LLC, 1600 Market Street, Suite 3800, Philadelphia, PA 19103

Address of Defendant: 1900 E Street NW, Washington, D.C. 20415

Place of Accident, Incident or Transaction: Philadelphia, PA and Washington, D.C.

(*Use Reverse Side For Additional Space*)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))  Yes☐  No☒

Does this case involve multidistrict litigation possibilities?  Yes☐  No☒

*RELATED CASE, IF ANY:*

Case Number: _____  Judge _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?  Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
(Please specify) Federal Employees Health Benefits Program and Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) _____

**ARBITRATION CERTIFICATION**

(*Check Appropriate Category*)

I, GREGORY B. HELLER, counsel of record hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: 9/9/13 _____  _____  61130
Attorney-at-Law  Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 9/9/13 _____  _____  61130
Attorney-at-Law  Attorney I.D.#

CIV. 609 (5/2012)

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: c/o Young Ricchiuti Caldwell & Heller, LLC, 1600 Market Street, Suite 3800, Philadelphia, PA 19103

Address of Defendant: 1900 E Street NW, Washington, D.C. 20415

Place of Accident, Incident or Transaction: Philadelphia, PA and Washington, D.C.

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

  (Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐   No☒

Does this case involve multidistrict litigation possibilities?    Yes☐   No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

    Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?

    Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?

    Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?

    Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
    (Please specify) Federal Employees Health Benefits Program and Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

## ARBITRATION CERTIFICATION

*(Check Appropriate Category)*

I,   GREGORY B. HELLER   , counsel of record do hereby certify:

  ☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

  ☒ Relief other than monetary damages is sought.

DATE: 9/9/13        _____        61130

                            Attorney-at-Law             Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 9/9/13        _____        61130

                            Attorney-at-Law             Attorney I.D.#

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| JOHN SMITH | : | CIVIL ACTION |
| v. | : | |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) (✓)

(f) Standard Management – Cases that do not fall into any one of the other tracks. ( )

| | | |
|---|---|---|
| 9/9/13 | _[signature]_ | **JOHN SMITH** |
| **Date** | **Attorney-at-law** | **Attorney for Plaintiff** |
| 267-546-1004 | 267-546-1039 | gheller@yrchlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN SMITH** | : | |
| **c/o Gregory B. Heller** | : | |
| **Young Ricchiuti Caldwell & Heller, LLC** | : | **No. _____** |
| **1600 Market Street, Suite 3800** | : | |
| **Philadelphia, PA 19103** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES OFFICE OF** | : | |
| **PERSONNEL MANAGEMENT** | : | |
| **1900 E Street NW** | : | |
| **Washington, DC  20415-3610** | : | |
| | : | |
| **Defendant** | : | |

## COMPLAINT

### Introduction

The Federal Employees Health Benefits Program ("FEHBP") provides health insurance to about 8 million federal employees and retirees and their families.  Participants choose a private health insurance plan from competing private insurers, and the costs of the coverage are shared by employees and the government.  The majority of employees and retirees select a plan offered by the Blue Cross Blue Shield Association, known as the federal Blue Cross Blue Shield Service Benefit Plan (the "Federal Blue Cross Plan").

All FEHBP plans are required to comply with the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (the "MHPAEA"), a law that prohibits discrimination against behavioral health conditions and substance use disorders.  The Federal

Blue Cross Plan, however, does not comply with the MHPAEA.  This lawsuit seeks to address one particularly glaring violation of the MHPAEA, and to prevent similar violations in the future.

The disease of addiction directly affects about eight percent of the American population (some estimates place the number much higher).  The disease affects about one in every four families.  There is no reason whatsoever to believe that federal employees and retirees and their families are categorically spared by the disease, or visited by its ravages any less frequently.

Untreated and inadequately treated addictions are a significant driver of healthcare costs, and every dollar spent properly treating addiction returns health care cost savings many times the amount spent on treatment.  And we cannot pretend that we are remotely serious about the war on drugs in this country, unless we are prepared to address the demand for illegal drugs created by untreated and inadequately treated addictions.

For many with this disease, inpatient treatment is a vitally important part of the continuum of care, and without this setting many patients would have no realistic chance at sustained recovery.  A handful of these patients have medical complications that require inpatient addiction treatment in a hospital, but most patients do not require a hospital, and even those who do often quickly become stable and therefore no longer need a hospital.  Instead, for the overwhelming majority of patients who need inpatient care, the most appropriate treatment is an inpatient *non-hospital* setting (a setting that is sometimes referred as residential addiction treatment).  In fact, the most recent data available from the federal government's Substance Abuse and Mental Health Service Administration's National Survey of Substance Abuse Treatment Services indicate that among those patients who receive inpatient treatment for a

substance use disorder, 88% receive treatment in an inpatient *non-hospital* (that is, residential) setting.

The Federal Blue Cross Plan excludes coverage for inpatient non-hospital addiction treatment.  Under the MHPAEA, this exclusion is not allowed.  The Federal Blue Cross Plan has used this exclusion to deny coverage for inpatient non-hospital rehabilitation that is desperately needed by John Smith (a pseudonym), a federal employee with 23 years of service who stands to lose his job and his family, and quite possibly his life, if he does not immediately receive the addiction treatment he needs.

Plaintiff has filed this lawsuit seeking to prevent the Federal Blue Cross Plan from applying this unlawful exclusion to Mr. Smith, and to prevent the Federal Blue Cross Plan from applying it to other vulnerable federal employees and retirees and their families in the future.

## The Parties

1.      John Smith is the pseudonym for an individual who lives in Delaware County, Pennsylvania.  He can be contacted through his undersigned counsel.

2.      Defendant United States Office of Personnel Management (hereinafter "OPM") is a government agency with an address at 1900 E Street NW, Washington, DC  20415-3610.

3.      Mr. Smith is an employee of a federal agency, and this case involves an unlawful denial of benefits that should be available to Mr. Smith under his Federal Blue Cross Plan.

4.      OPM is a proper defendant in this case pursuant to 5 U.S.C. sec. 890.107(c), which provides that "a legal action to review final action by OPM involving [a] denial of health benefits must be brought against OPM and not against the carrier or carrier subcontractors".

## Jurisdiction

5.    This Court has jurisdiction pursuant to 5 U.S.C. § 8912 (jurisdiction over civil actions and claims involving FEHBP), 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1346 (claims against United States), and 5 U.S.C. §§ 704 and 706 (Administrative Procedures Act).

6.    This Court has authority to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## Venue

7.    Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and 1402(a), because Plaintiff resides in this District and because some of the events giving rise to Plaintiff's claims occurred in this District.

### John Smith Needs Inpatient Non-Hospital Addiction Treatment, And Coverage Has Been Unlawfully Refused.

8.    Mr. Smith is 50 years old, and is an employee of a United States government agency. He has worked there since 1990 and is currently on leave.  He is married, and has three children.

9.    Mr. Smith is a member of the Federal Blue Cross Plan.

10.    Mr. Smith's current benefits, and the procedures that are applicable to requests for coverage and requests for benefits, are set forth in the 2013 Federal Blue Cross Plan brochure.  (A copy of this document is attached hereto as Exhibit "A".)

11.    The Federal Blue Cross Plan was created pursuant to a contract between OPM and the Blue Cross Blue Shield Association.  Under this contract, benefits are administered by local Blue Cross affiliates.  Because Mr. Smith lives in southeastern Pennsylvania, this means that his benefits are administered by Independence Blue Cross ("IBC").  IBC does not directly handle the management of behavioral health benefits (a category that includes addiction treatment).  IBC has

subcontracted with Magellan Behavioral Health ("Magellan"), and Magellan handles those benefits for Mr. Smith and other IBC Federal Blue Cross Plan members.

12.     Mr. Smith suffers from addiction.

13.     By August 30, 2013, Mr. Smith was about to lose his job as a result of his addiction. His addiction had progressed to the point where outpatient treatment was virtually certain to fail. In the judgment of clinicians involved in his treatment, he needed inpatient treatment.

14.     On August 30, Mr. Smith was admitted to the inpatient detoxification unit at the Malvern Institute ("Malvern"), an inpatient non-hospital addiction treatment (that is, residential) facility located in Malvern, Pennsylvania.  On September 5, 2013 he was transitioned from the detoxification unit to Malvern's inpatient non-hospital addiction treatment program (sometimes referred to as its residential program).

15.     On September 4, Malvern personnel asked Magellan to authorize coverage for Mr. Smith's treatment in Malvern's inpatient non-hospital addiction treatment program.

16.     On September 5, 2013 Magellan faxed letters to Malvern, to Mr. Smith, and to a medical director at Malvern, David Jones, D.O., stating that Magellan was refusing coverage for this treatment.  (Copies of Magellan's September 5 letters, with Mr. Smith's name and other identifying information redacted, are attached hereto as Exhibit "B".)

### Mr. Smith Has Exhausted His Administrative Remedies.

17.     The 2013 Federal Blue Cross Plan brochure states, at page 23, that a decision on a request for an extension of an ongoing course of treatment will be made within 24 hours.  That same page also states that a decision on a request for urgent reconsideration will be communicated within 72 hours.

18.     An urgent care claim is one in which waiting for treatment "could seriously jeopardize your life, health, or ability to regain maximum function, or in the opinion of a physician with knowledge of your medical condition, would subject you to severe pain that cannot be adequately managed without this care or treatment." 2013 Federal Blue Cross Plan brochure at 22. That obviously applies here, because if Mr. Smith leaves Malvern before he has completed his course of treatment and is prepared to transition to a different treatment setting, he could relapse, with predictably catastrophic consequences.

19.     The 2013 Federal Blue Cross Plan brochure states, at page 22, that requests for review can, if requested by the member, be reviewed simultaneously by both OPM and the Federal Blue Cross Plan.

20.     On September 5, 2013, Mr. Smith, acting through his counsel, faxed a request for review to OPM and also to the Federal Blue Cross Plan. This letter expressly invoked the 24-hour (and in the alternative, the 72-hour) review timeframes provided for in the 2013 Federal Blue Cross Plan brochure, and expressly requested simultaneous review by both the Federal Blue Cross Plan and by OPM. (A copy of this letter, with identifying information redacted and without exhibits, is attached hereto as Exhibit "C".)

21.     More than 72 hours have passed since this letter was faxed, and Mr. Smith has received no response. This lack of a response imperils Mr. Smith's ability to continue receiving the treatment he needs at Malvern.

22.     Mr. Smith has exhausted his administrative remedies.

23.     In addition, any further attempts to exhaust administrative remedies would be futile. The claims asserted in this lawsuit involve an unlawful benefit plan design, and there are no facts that

-6-

might be developed through an administrative process that could change or cure the legal violations

that form the basis for Plaintiff's claims.  Furthermore, past experience with IBC and OPM strongly

suggests that an express decision on Plaintiff's request for reconsideration will take many months

to arrive, if it ever arrives at all.  That is not acceptable for a patient in Mr. Smith's situation, or for

any patient who is going through an ongoing course of treatment.

### The Exclusion of Inpatient Non-Hospital Addiction Treatment Violates the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008.

24.     The Federal Blue Cross Plan is subject to, and is required to comply with, the

MHPAEA and its implementing Interim Final Rules.  Interim Final Rules Under the Paul Wellstone

and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, 75 Fed. Reg. 5410 (Feb.

2, 2010) (codified at 29 C.F.R. pt. 2590, Treas. Reg. pt. 54, and 45 C.F.R. pt. 146) (hereinafter the

"Interim Final Rules").

25.     Under the MHPAEA, a health plan or health insurer cannot impose financial

requirements or treatment limitations on behavioral health care (more precisely, on "mental health

or substance use disorder benefits") that are more restrictive than "the predominant treatment

limitations [or financial requirements] applied to substantially all medical and surgical benefits

covered by the plan (or coverage)."  42 U.S.C. § 300gg-26(a)(3)(A)(ii),

29 U.S.C. § 1185a(a)(3)(A)(i), (A)(ii), and 26 U.S.C. § 9812(a)(3)(A)(i), (A)(ii).

26.     Furthermore, a health plan or health insurer cannot impose any "separate treatment

limitations that are applicable only with respect to mental health or substance use disorder benefits."

*Id.*

27.     Excluding a benefit is a treatment limitation, because the number of days allowed for that particular treatment is zero.

28.     The Interim Final Rules underscore this point, and expressly provide that the MHPAEA extends to benefit design and plan design. *See, e.g.,* 45 C.F.R. § 146.136(c)(2)(ii) (standards for plan design); 29 C.F.R. § 2590.712(c)(2)(ii) (same); Treas. Reg. § 54.9812-1T(c)(2)(ii) (same).

### Excluding Inpatient Non-Hospital (Residential) Addiction Treatment Violates the MHPAEA's Classification Test.

29.     The Interim Final Rules establish a "Classification test," which requires that if benefits are provided in a category for medical/surgical conditions, then benefits must be provided in the same category for behavioral health/substance use disorders.

30.     More precisely, the Interim Final Rules state that "[i]f a plan provides mental health or substance use disorder benefits in any classification of benefits described in this paragraph (c)(2)(ii), mental health or substance use disorder benefits must be provided in every classification in which medical/surgical benefits are provided." 45 C.F.R. § 146.136(c)(2)(ii) (Health and Human Services regulations); 29 C.F.R. § 2590.712(c)(2)(ii) (identically worded provision in ERISA regulations); Treas. Reg. § 54.9812-1T(c)(2)(ii) (identically worded provision in Department of the Treasury regulations).

31.     The prescribed classifications are:

     (1)     Inpatient, in-network.

     (2)     Inpatient, out-of-network

     (3)     Outpatient, in-network

(4)    Outpatient, out-of-network

(5)    Emergency care

(6)    Prescription drugs

*Id.* Importantly, these are "the only classifications used in applying the rules of this paragraph (c)." *Id.*

32.    Under this standard, if medical/surgical benefits are provided in one of these classifications, then behavioral health and substance use disorder benefits must also be provided in that same classification.

33.    Because the Federal Blue Cross Plan provides inpatient, in-network medical/surgical benefits, it must also provide inpatient, in-network behavioral health/substance use disorder benefits.

34.    Malvern is an in-network facility for IBC and therefore for the Federal Blue Cross Plan.

35.    The only question, then, is whether inpatient treatment necessarily includes inpatient *non-hospital* addiction treatment at facilities such as Malvern.  It does.

36.    Inpatient addiction treatment encompasses two very different care settings:  (a) care that is provided in an inpatient hospital setting (such as a general acute care hospital or a specialty hospital), and (b) care that is provided in an inpatient *non-hospital* setting.

37.    Some patients have medical complications that require inpatient *hospital* care, but most patients do not require a hospital, and even those who do often quickly become stable and therefore no longer need a hospital.  Instead, for the overwhelming majority of patients who need inpatient care, the most appropriate treatment is an inpatient *non-hospital* setting.

38.     The overwhelming majority of inpatient addiction treatment is provided in an inpatient non-hospital setting.  According to the Substance Abuse and Mental Health Services Administration's 2011 National Survey of Substance Abuse Treatment Services, of those patients receiving inpatient treatment, 88% received treatment in non-hospital facilities and only 12% received that treatment in hospital facilities.  National Survey of Substance Abuse Treatment Services (N-SSATS):  2011 Data on Substance Abuse Treatment Facilities ("NSSATS 2011"), at Table 5.2a.[1]

39.     The NSSATS data refer to residential treatment, and as noted above, in some contexts that term can sometimes refer to a custodial setting.  The NSSATS data, however, clearly refer to a treatment setting, not a custodial setting.  *See* NSSATS 2011 Appendix A (noting exclusion of halfway houses "that did not provide substance abuse treatment").  In other words, "residential" as used in the NSSATS data means the inpatient non-hospital addiction treatment addressed in this lawsuit.[2]

---

[1]     The entire 2011 report is also available at http://www.samhsa.gov/data/DASIS/2k11nssats/ NSSATS2011TOC.htm.

Other measures of treatment setting reflected in the 2001 NSSATS data are roughly similar.  *See, e.g.,* Table 4.16a (Facility licensing, certification, or accreditation by type of care offered; for inpatient treatment, 83% are non-hospital and 17% are hospital).

[2]     This use of "residential" to refer to treatment is also found in accreditation standards.  For example, CARF refers to residential treatment programs as programs "organized and staffed to provide both general and specialized nonhospital-based interdisciplinary services 24 hours a day, 7 days a week . . . . Residential treatment services are organized to provide environments in which the persons reside and receive services from personnel who are trained in the delivery of services for persons with behavioral health disorders or related problems."  CARF 2011 Behavioral Health Program Descriptions, at 13, available at http://www.carf.org/programdescriptions/bh.

-10-

40.     Licensure data from the Pennsylvania Department of Health further confirm that the overwhelming majority of the time, inpatient addiction treatment means inpatient non-hospital care. Those records establish that 96% of the available inpatient addiction treatment beds in Pennsylvania are inpatient *non-hospital* beds and only 4% are inpatient *hospital* beds.

41.     Inpatient non-hospital care is part of the continuum of care addressed in the American Society of Addiction Medicine's Patient Placement Criteria; is recognized by accrediting bodies such as the Joint Commission and the Commission on Accreditation of Rehabilitation Facilities ("CARF"); and is an integral part of most states' licensing and regulatory regimes.  This level of care is also recognized as an integral part of the continuum of care in the National Institute of Drug Abuse's PRINCIPLES OF DRUG ADDICTION TREATMENT: A RESEARCH BASED GUIDE, available at http://www.drugabuse.gov/publications/principles-drug-addiction-treatment.

42.     It is clear, then, that with addiction, inpatient treatment means inpatient non-hospital treatment, and the Federal Blue Cross Plan's exclusion of inpatient non-hospital addiction treatment violates the Classification test.

### Excluding Inpatient Non-Hospital (Residential) Addiction Treatment Violates the MHPAEA's Ban on Discriminatory Non-Quantitative Treatment Limitations.

43.     The Federal Blue Cross Plan's exclusion of inpatient non-hospital treatment at facilities such as Malvern is also unlawful for another, separate reason: it violates the MHPAEA's ban on discriminatory non-quantitative treatment limitations.  Thus, the Federal Blue Cross plan would be unlawful even if it passed the Classification test (which it does not).

44.     The MHPAEA expressly prohibits treatment limitations that are more restrictive than corresponding limitations on medical/surgical benefits.  The Interim Final Rules establish that this

-11-

includes not only quantitative limitations – such as limitations on the number of visits or days of coverage – but also nonquantitative treatment limitations – such as "[m]edical management standards limiting or excluding benefits based on medical necessity or medical appropriateness, or based on whether the treatment is experimental or investigative". Treas. Reg. § 54.9812(c)(4); 29 C.F.R. § 2590.712(c)(4)(ii)(A); 45 C.F.R. § 146.136(c)(4)(ii)(A).

45.     The Interim Final Rules prohibit the imposition of nonquantitative treatment limitations "unless, under the terms of the plan as written and in operation, any *processes, strategies, evidentiary standards, or other factors* used in applying the nonquantitative treatment limitation" to such benefits are "comparable, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in that classification, except to the extent that recognized clinically appropriate standards of care may permit a difference." Treas. Reg. 54.9812(c)(4)(I) (emphasis added); 29 C.F.R. § 2590.712(c)(4)(ii)(A) (emphasis added); 45 C.F.R. § 146.136(c)(4)(ii)(A) (emphasis added).

46.     Plan design inevitably involves "processes, strategies, evidentiary standards, [and] other factors," because plan designers have to decide what benefits to include and what benefits to exclude.  Failing to include an inpatient non-hospital addiction treatment benefit violates this standard.

47.     Inpatient non-hospital addiction treatment is a recognized part of the continuum of care, and for those patients who require inpatient care is the treatment setting used 80-90% of the time. The Federal Blue Cross Plan does not categorically exclude benefits for any medical/surgical treatment that is a recognized part of the continuum of care, and does not categorically exclude benefits for any treatment setting that is used with comparable frequency for any common

-12-

medical/surgical condition. And if processes, strategies, and evidentiary standards that were used in benefit design did not support the omission of such a benefit on the medical/surgical side, they will not and cannot support the omission of such a benefit on the behavioral health/substance use disorder side.

48.    Further evidence of discriminatory standards is found in the 2013 Federal Blue Cross Plan brochure. At page 142, that booklet defines "[r]esidential treatment centers" in a way that includes both inpatient non-hospital addiction treatment and other, radically different treatment settings (such as "emotional growth academies" and "boot camps") that can be completely unregulated. The Federal Blue Cross Plan then proceeds to exclude coverage at residential treatment centers.

49.    Inpatient non-hospital addiction treatment programs are regulated and monitored at the State level, and are the subject of nationally recognized accreditation standards. Lumping inpatient non-hospital treatment programs together with unregulated boot camps makes no sense. It also violates the MHPAEA. A dominant, highly regulated treatment modality cannot be excluded by claiming that it looks like other, unregulated treatments, unless that same fuzzy illogic is also applied to physical health. But on the physical health side, treatments are never excluded on the basis that they look like other, non-covered treatment. Physical therapy (covered) can look a lot like an exercise program (not covered), but physical therapy is not excluded on that ground. Nutritional counseling (covered) can look a lot like a commercial weight loss program (not covered), but nutritional counseling is not excluded on that ground.

50.    It might take some rigor to separate out (a) those residential settings that are accepted, regulated, monitored, and an accepted part of both the standard of care and the recognized continuum

-13-

of care from (b) those residential settings that are none of these things. But that kind of work has been carried out on the physical health side, and failing to do so on the behavioral health side both constitutes and perpetuates the very discrimination that the MHPAEA was supposed to end.

51. The Federal Blue Cross Plan's purported exclusion of care provided at "residential treatment centers" cannot be applied to exclude coverage for the inpatient non-hospital care Mr. Smith has received and is continuing to receive at Malvern.

52. Covering the full continuum of addiction treatment for our federal workforce is also sound policy. As part of the rulemaking process that preceded the Interim Final Rules, the Department of Health and Human Services and the Department of Labor examined in detail the economic impact of the MHPAEA, and set forth in a regulatory preface a summary of that analysis. The Departments covered in some detail the economic burdens of untreated and inadequately treated behavioral health conditions and substance use disorders. *See generally* 75 Fed. Reg. 5410, 5419-27 (Feb. 2, 2010). These costs are an enormous burden on the economy as a whole, and are also a particular and very specific burden on the healthcare system, because individuals with untreated, or inadequately treated, behavioral health conditions and substance use disorders tend to have significantly higher medical/surgical health care needs.

53. The federal government should listen to its own policymakers. Treating addictions makes sense, and this necessarily includes coverage of the entire continuum of care – including care provided in an inpatient non-hospital setting. Members of our federal workforce and their families and federal retirees and their families deserve no less.

54. While OPM and the Federal Blue Cross Plan are required to comply with the MHPAEA, OPM does not have any special responsibility to administer the MHPAEA. OPM's

interpretation of the MHPAEA is not entitled to deference and this Court's review of OPM's actions with respect to coverage of inpatient non-hospital addiction treatment are subject to *de novo* review.

55.      In any event, both OPM's refusal to cover inpatient non-hospital addiction treatment and its refusal to direct that the Federal Blue Cross Plan cover such treatment constitute an abuse of discretion.

### Count One
### Judicial Review Pursuant To
### 5 C.F.R. § 890.107(c)

56.      Plaintiff incorporates by reference the preceding paragraphs of this complaint, as if fully set forth herein.

57.      As of the time of filing of this complaint, the timeframes for review set forth in the Federal Blue Cross Plan brochure have passed.

58.      Mr. Smith cannot pay for treatment at Malvern.

59.      Mr. Smith is well aware that if he leaves Malvern at this point, before he receives the treatment that he needs, catastrophe is almost certain.

60.      OPM's failure to respond to Mr. Smith's request for reconsideration within the timeframes established in the Plan brochure leaves in place the Federal Blue Cross Plan's denial of benefits, and constitutes final agency action.

61.      "A covered individual may seek judicial review of OPM's final action on the denial of a health benefits claim."  5 C.F.R. § 890.107(c).

62.      The Federal Blue Cross Plan's decision to exclude coverage for inpatient non-hospital (residential) treatment and its decision to exclude coverage for inpatient non-hospital addiction treatment for Mr. Smith are unlawful and violate the MHPAEA.

-15-

**Count Two**
**Claims Under The Administrative Procedures Act**
**5 U.S.C. § 706**

63.     Plaintiff incorporates by reference the preceding paragraphs of this complaint, as if fully set forth herein.

64.     OPM's failure to respond to Mr. Smith's request for reconsideration within the timeframe established in the Plan brochure leaves in place the Federal Blue Cross Plan's denial of benefits, and constitutes final agency action.

65.     The terms of the Federal Blue Cross Plan are subject to the approval of OPM.  5 C.F.R. § 890.203 (plan approval process); *see also* 5 U.S.C. § 8902(d) (contracts with plans "shall include such maximums, limitations, exclusions, and other definitions of benefits as [OPM] considers necessary or desirable").

66.     OPM's decision to approve and accept a Federal Blue Cross Plan that excluded coverage for inpatient non-hospital addiction treatment constitutes final agency action.

67.     OPM's decision to enter into a contract with the Blue Cross Blue Shield Association that either contained or permitted the exclusion of inpatient non-hospital addiction treatment also constitutes final agency action.

68.     Under Section 706(2) of the Administrative Procedures Act, a court reviewing a final agency action shall "hold unlawful and set aside agency action, findings, and conclusions found to be (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . [or] (c) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right".

69.     OPM's refusal to authorize and direct coverage of Mr. Smith's inpatient non-hospital addiction treatment at Malvern is not in accordance with law, and falls short of the statutory rights established in the MHPAEA, because it violates the MHPAEA.

70.     OPM's decision to approve and accept a Federal Blue Cross Plan that excludes coverage for inpatient non-hospital addiction treatment and its decision to enter into a contract with the Blue Cross Blue Shield Association that contains or permits such an exclusion are not in accordance with law and fall short of the statutory rights established in the MHPAEA.

71.     OPM's refusal to authorize and direct coverage of Mr. Smith's inpatient non-hospital addiction treatment at Malvern, OPM's decision to approve and accept a Federal Blue Cross Plan that excludes coverage for inpatient non-hospital addiction treatment, and OPM's decision to enter into a contract with the Blue Cross Blue Shield Association that contains or permits such an exclusion were arbitrary and capricious,  and constitute abuses of discretion because there is no sound, legally permissible reason for OPM's decision to exclude or permit the exclusion of inpatient non-hospital addiction treatment.

72.     Under Section 706(1) of the Administrative Procedures Act, a court shall "compel agency action unlawfully withheld or unreasonably delayed".

73.     OPM was, and is, required to direct the Federal Blue Cross Plan to overturn its initial coverage denial and approve Mr. Smith's inpatient non-hospital addiction treatment at Malvern. OPM's failure to do so constitutes agency action unlawfully withheld.

## Prayer for Relief

WHEREFORE Plaintiff John Smith requests entry of an Order that:

-17-

a.    declares that the Federal Blue Cross Plan's exclusion of inpatient non-hospital addiction treatment violates the MHPAEA;

b.    declares that the Federal Blue Cross Plan's exclusion of inpatient non-hospital addiction treatment, to the extent that it is applied to inpatient non-hospital addiction treatment, violates the MHPAEA;

c.    requires that the Federal Blue Cross Plan cover Mr. Smith's inpatient non-hospital addiction treatment at Malvern (and, if necessary, requires OPM to direct the Federal Blue Cross plan to do so);

d.    preliminarily and permanently enjoins OPM from giving effect to any policy exclusion that excludes coverage for inpatient non-hospital addiction treatment (and, if necessary, directs OPM to require that any FEHBP plan not give effect to any such exclusion);

e.    preliminarily and permanently enjoins OPM from approving or accepting any FEHBP plan that excludes coverage for inpatient non-hospital addiction treatment;

f.      awards Plaintiff costs and attorneys fees; and

g.      awards such other relief as the Court deems appropriate.

YOUNG RICCHIUTI CALDWELL & HELLER, LLC

BY:_____
        Gregory B. Heller (61130)
        Young Ricchiuti Caldwell & Heller, LLC
        1600 Market Street, Suite 3800
        Philadelphia, PA 19103
        (267) 546-1004
        Attorneys for Plaintiff

Date: September 9, 2013